PEOPLE v HARLAN

Docket No. 62956. Submitted August 1, 1983, at Grand Rapids.—
Decided October 24, 1983.

Robert E. Harlan was convicted of uttering and publishing a
forged check, Kent Circuit Court, George V. Boucher, J. Defen-
dant appealed, alleging that the 120-day rule of the Interstate
Agreement on Detainers was violated because his trial com-
menced eight months after he was turned over to Michigan
authorities, and also alleging that he was denied effective
assistance of counsel. *Held:*

1. The running of the 120-day period was tolled at various
times for reasons which constitute good cause or which were at
defendant's request. Of the eight-month period between defen-
dant's being turned over to Michigan authorities and com-
mencement of trial, 109 days are chargeable against the 120-
day limit. Thus, the Interstate Agreement on Detainers was not
violated.

2. The trial court did not err by failing to appoint substitute
counsel where there was no showing of an irreconcilable dis-
pute between defendant and his attorney regarding trial strat-
egy or a substantial defense. Further, the actions of defense
counsel complained of by defendant were matters of trial
strategy. Review of defense counsel's overall performance re-
veals that defendant was not denied effective assistance of
counsel.

Affirmed.

1. CRIMINAL LAW — INTERSTATE AGREEMENT ON DETAINERS — DELAY
OF TRIAL.

The 120-day period within which a prisoner must be brought to
trial when his presence in the jurisdiction is obtained pursuant
to the Interstate Agreement on Detainers may be tolled or
otherwise exceeded for any of three reasons: (1) to allow the

REFERENCES FOR POINTS IN HEADNOTES

[1, 3] 21 Am Jur 2d, Criminal Law § 405.

[2, 3] 21 Am Jur 2d, Criminal Law § 406.

[4] 5 Am Jur 2d, Appeal and Error § 555.
21A Am Jur 2d, Criminal Law § 984.
Modern status of rules and standards in state courts as to adequacy
of defense counsel's representation of criminal client. 2 ALR4th
27.

[5] 21A Am Jur 2d, Criminal Law § 749.

[6] 21A Am Jur 2d, Criminal Law § 985.

trial court to grant any necessary and reasonable continuance for good cause shown in open court with the defendant or his counsel present, (2) for as long as the defendant is unable to stand trial, or (3) for any period of delay caused by the defendant's request or in order to accommodate the defendant (MCL 780.601; MSA 4.147[1]).

2. CRIMINAL LAW — INTERSTATE AGREEMENT ON DETAINERS — DELAY OF TRIAL — MENTAL HEALTH PROCEEDINGS.

A delay in bringing to trial a prisioner subject to the Interstate Agreement on Detainers which is attributable to mental health proceedings initiated by the defendant is for good cause and, where reasonable, prevents the running of the 120-day period within which trial is to begin under the act.

3. CRIMINAL LAW — INTERSTATE AGREEMENT ON DETAINERS — DELAY OF TRIAL — UNAVAILABILITY OF WITNESSES.

An adjournment granted to the prosecutor because of the unavailability of witnesses was reasonable for purposes of tolling the 120-day period within which a prisoner subject to the Interstate Agreement on Detainers is to be brought to trial where the witnesses were unavailable because of the last-minute failure of an anticipated plea agreement and where no bad faith is shown on the part of the prosecutor.

4. CRIMINAL LAW — ASSISTANCE OF COUNSEL — MOTION FOR NEW TRIAL — APPEAL.

A claim of ineffective assistance of counsel should generally be presented to the trial court in a motion for a new trial; however, review by the Court of Appeals is not precluded by the absence of such a motion where the defendant's claim depends upon facts of record which are readily apparent.

5. CRIMINAL LAW — ASSISTANCE OF COUNSEL — BURDEN OF PROOF.

The burden is on the defendant to establish his claim of ineffective assistance of counsel.

6. CRIMINAL LAW — ASSISTANCE OF COUNSEL — APPEAL.

An appellate court, in evaluating a claim of ineffective assistance of counsel to determine whether defense counsel performed as well as a lawyer with ordinary training and skill in the criminal law, undeflected by conflicting considerations, should review defense counsel's overall performance.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *David H. Sawyer,* Prosecuting Attorney, and *Timothy K. McMorrow,* Chief Appellate Attorney, for the people.

*George S. Buth,* for defendant on appeal.

Before: V. J. BRENNAN, P.J., and SHEPHERD and E. A. QUINNELL,* JJ.

SHEPHERD, J. Defendant was convicted of uttering and publishing a forged check, MCL 750.249; MSA 28.446. He was sentenced to a term of from 5 to 14 years imprisonment, to be served concurrently with a federal sentence defendant was already serving. Defendant appeals as of right. We affirm.

Defendant first claims that the 120-day rule of the Interstate Agreement on Detainers, MCL 780.601; MSA 4.147(1), was violated because defendant's trial commenced eight months after he arrived in Michigan. Article IV(c) of the Interstate Agreement on Detainers provides that, where a prisoner is transferred from imprisonment in one jurisdiction to detention in another jurisdiction pursuant to the act, trial shall be commenced within 120 days of the arrival of the prisoner in the receiving state. Failure to do so requires the trial court to dismiss any charges brought under the act. The 120-day period may be tolled or otherwise exceeded, however, for three reasons: (1) to allow the trial court to grant any necessary and reasonable continuance for good cause shown in open court with the defendant or his counsel present; (2) for as long as the defendant is unable to stand trial; or (3) for any period of delay caused by the defendant's request or in order to accommodate the defendant. *People v Meyers (On Remand),* 124 Mich App 148; 335 NW2d 189 (1983); *People v Cook,* 95 Mich App 645, 652-653; 291 NW2d 152 (1980), *lv den* 412 Mich 882 (1981).

The offense involved in the instant case occurred

---

* Circuit judge, sitting on the Court of Appeals by assignment.

in Kent County on April 14, 1980, and a warrant was issued on May 7, 1980. On May 11, 1980, defendant turned himself in to Chicago authorities as a federal parole violator. Shortly thereafter, he was placed in a medical facility after suffering a mental breakdown. Kent County officials learned of defendant's whereabouts in September, 1980, but were told that defendant was in no condition to travel. In December, 1980, or January, 1981, defendant was transferred to a federal prison in Milan, Michigan, and on January 27, 1981, the Kent County Prosecutor filed a detainer request with Milan prison officials. On March 10, 1981, defendant was turned over to Michigan state authorities, and his trial was conducted on November 9, 1981. In denying defendant's motion to dismiss, the trial court found that the delay in trying defendant did not violate the 120-day rule contained in the Interstate Agreement on Detainers. This, defendant claims, was error. We cannot agree.

The following chronological chart depicts the events which followed defendant's return to Michigan:

| DATE | EVENT |
| --- | --- |
| 3/10/81 | Defendant turned over to state authorities |
| 3/17/81 | Motion for postponement of preliminary examination at defendant's request |
| 6/24/81 | Forensic center's report issued |
| 7/13/81 | Forensic center's report filed in 63rd District Court |

| 8/07/81 | District court order determining defendant competent to stand trial; preliminary examination |
| 10/28/81 | Trial originally scheduled; prosecutor's motion to postpone |
| 11/09/81 | Trial commenced |

The 120-day limit began to run when defendant was turned over to Michigan authorities on March 10, 1981. The seven days which elapsed before defendant's preliminary examination was held on March 18, 1981, were not attributable to any of the three acceptable reasons for tolling which were listed previously. These seven days, therefore, are properly charged against the 120 days.

On March 17, 1981, defendant moved for a postponement of his trial so that he might undergo psychiatric evaluation. The parties stipulated to, and the court ordered, an adjournment "until completion of the psychiatric exam". Although no Michigan cases directly address the issue of how time spent obtaining a psychiatric examination should be charged in relation to the Interstate Agreement on Detainers, we agree with the Superior Court of Pennsylvania, which ruled in *Commonwealth v Scott*, 219 Pa Super 470; 281 A2d 754 (1971), that a delay attributable to mental health proceedings initiated by defendant was for "good cause" and was "reasonable" within the meaning of the Interstate Agreement on Detainers and therefore prevented the 120-day limitation period from running. We also note that the delay caused while a psychiatric examination was performed was in order to accommodate defendant who wished not only to challenge his competency to

stand trial but, if appropriate, to raise an insanity defense. See *Cook, supra,* 653, 654.

Under MCL 330.2028; MSA 14.800(1028), when a defendant is ordered to undergo a competency examination pursuant to MCL 330.2026; MSA 14.800(1026), as was the case here, the examination is to be performed and a written report submitted within 60 days. An examination related solely to a claim of insanity, MCL 768.20a(2); MSA 28.1043(1)(2), is to be completed within 30 days. Clearly, then, at least 60 of the 100 days between March 17, 1981, when defendant requested the examination, and the issuance of the report on June 24, 1981, can be attributed to a delay caused by defendant's own request for a psychiatric evaluation. The remaining 40 days are also attributable to defendant's request: the first 7 days are attributable to preparation and entry of an order providing for the requested evaluation; the remaining 33 days are also attributable to defendant's request since the forensic examiner indicated that extra time was required in order to obtain defendant's past psychiatric and mental records, without which the final competency report could not be written.

The next delay occurred between June 24, 1981, when the forensic report was issued, and July 13, 1981, the date it was received by the trial court. This delay was apparently due to misaddressing the report to the 61st District Court rather than the 63rd District Court. We are of the opinion that this delay was not the fault of the prosecutor or the court and constituted a reasonable delay for good cause; the 120-day limit was therefore tolled for this 19-day period. Further, this period may arguably be included within the general delay of trial occasioned by defendant's request for an eval-

uation since it was a clerical error on the part of those conducting the examination and not on the part of the court or the prosecutor.[1]

The 25-day delay between the filing of the report on July 13, 1981, and the determination of competency on August 7, 1981, was not totally reasonable, however, and a portion of that time is charged against the 120 days. MCL 330.2030; MSA 14.800(1030) requires the trial court to hold a competency hearing within five days of receipt of the written report from the forensic center unless a reasonable delay is requested by either party for good cause. No such request or reason for the additional 20-day delay appears on the record. We therefore find that the amount of time (i.e., 20 days) exceeding the 5 days allowed by statute for a competency hearing is charged against the 120 days.

The 82-day period between August 7, 1981, the date of entry of the order determining defendant competent to stand trial, and October 28, 1981, the date originally scheduled for defendant's trial, was properly charged against the 120 days.

The final delay was the 12-day gap between October 28, 1981, the scheduled date of trial, and

---

[1] As noted elsewhere in this opinion, the time charged against the 120 days is computed to be 109 days. The delay occasioned by the misdirection of the forensic report is 19 days and, if it were added to the 109 days, would result in a 128-day delay—8 days beyond the statutory limit. We do not wish to imply that no delays caused by such clerical errors will be charged against the 120 days. There comes a point when the court, the prosecutor or the defense attorney must arrive at the conclusion that something has gone wrong and that a forensic report is missing or has not arrived. We believe that 19 days is not an excessive period and that no one can be seriously faulted for failing to observe within that period that the report was sent to the wrong address. The statute does not permit us to apply a comparative negligence approach and charge a portion of the 19 days to each party. The time is either charged to the 120-day period or it is not and we are obligated to make our determination under the facts of each case.

November 9, 1981, the date trial actually began. The parties had originally entered into a plea bargain and had agreed that a plea would be taken on October 28, 1981. The agreement broke down on that day, however, for reasons which are disputed. Since the prosecutor, in reliance on the plea bargain, had not subpoenaed any witnesses, the trial was adjourned until November 9, 1981.

An adjournment granted to a prosecutor in open court based upon unavailability of police witnesses has been held to be a "good cause continuance". *Foran v Metz,* 463 F Supp 1088 (SD NY, 1979), *aff'd without opinion* 603 F2d 212 (CA 2, 1979). Where a defendant was brought to trial beyond another state's 180-day requirement of its Interstate Agreement on Detainers as a result of an adjournment occasioned by the defendant's change of mind about pleading guilty, it has been held that the act was not violated. *People v Cranmer,* 55 App Div 2d 786; 389 NYS2d 905, 906 (1976); *Commonwealth v Martin,* 445 Pa 49, 53; 282 A2d 241, 243-244 (1971). In the instant case, the prosecution witnesses were unavailable because the anticipated agreement fell through. No bad faith has been shown on the part of the prosecutor. We find that the 9-day delay was reasonable and granted for good cause and the 120-day period is therefore tolled during that time.

The amount of time charged to the 120-day limit totals 109 days and may be broken down as follows: 7 days between March 10, 1981, and March 17, 1981; 20 of the 25 days between July 13, 1981, and August 7, 1981; 82 days between August 7, 1981, and October 28, 1981. Since the 120-day limit was tolled during the remaining periods of time between March 10, 1981, and November 9, 1981, the Interstate Agreement on Detainers was not

violated. The trial court's refusal to dismiss the charges against defendant was proper.

Defendant next argues that he was denied effective assistance of counsel. We disagree. Defendant's first court-appointed attorney was allowed to withdraw on August 26, 1981, after defendant had threatened to kill him and ordered him off the case. A second attorney was appointed that day and entered into plea negotiations on behalf of defendant. At the adjournment proceedings on October 28, 1981, after the plea bargain had broken down, the second defense counsel moved to withdraw from the case since defendant had threatened him with legal action as well as death and counsel felt he could therefore no longer represent defendant. The trial court adjourned the trial until November 9, 1981. At no time did it rule on the motion nor was the motion ever renewed by defense counsel.

At trial, defense counsel made no opening statement or closing argument. He presented no evidence but did cross-examine prosecution witnesses. At sentencing, counsel indicated that he had reviewed the presentence report and requested that any sentence received be served concurrently with the federal sentence defendant was already serving.

Generally, as the prosecution points out, a claim of ineffective assistance of counsel should be presented to the trial court in a motion for new trial. *People v Ginther,* 390 Mich 436; 212 NW2d 922 (1973); *People v Ulister Smith,* 124 Mich App 695; 335 NW2d 127 (1983). Although defendant failed to follow such a procedure in the instant case, review by this Court is not precluded since defendant's claim depends upon facts of record which are, in general, readily apparent. *Ginther, supra;*

*People v Lewis,* 64 Mich App 175; 235 NW2d 100 (1975).

Defendant first asserts that he was denied effective assistance of counsel when the trial court failed to appoint substitute counsel on defense counsel's representation that the attorney-client relationship had irretrievably broken down. We disagree. There was and is no showing that an "irreconcilable dispute" existed between defendant and his attorney regarding trial strategy or a substantial defense. See *People v Krist,* 93 Mich App 425; 287 NW2d 251 (1979), *app after remand on other grounds* 107 Mich App 701; 309 NW2d 708 (1981), *rev'd on other grounds* 413 Mich 937 (1982); *People v Otler,* 51 Mich App 256; 214 NW2d 727 (1974). Defendant was not entitled to perpetually threaten and then replace his court-appointed attorneys. See *Meyers, supra,* pp 165-166; *People v Henley,* 26 Mich App 15, 26; 182 NW2d 19 (1970).

Defendant also claims ineffective assistance of counsel as evidenced by his attorney's failure to make either an opening statement or closing argument, his failure to call witnesses on defendant's behalf, and his failure to bring to the sentencing court's attention certain factors to be considered in sentencing defendant.

The burden is on defendant to establish his claim of ineffective assistance of counsel. *Kowalak v United States,* 534 F Supp 186 (ED Mich, 1982); *People v Armstrong,* 124 Mich App 766; 335 NW2d 687 (1983). In evaluating whether defendant's lawyer performed as well as a lawyer with ordinary training and skill in the criminal law, undeflected by conflicting considerations, the appellate court should review defense counsel's overall performance. *People v Coyle,* 104 Mich App 636, 639; 305 NW2d 275 (1981), *lv den* 415 Mich 851 (1982).

None of the omissions complained of by defendant, in and of themselves, constitute reversible error. In the absence of a record made in connection with a motion for new trial, all of the actions of counsel complained of by defendant here are presumed to be taken pursuant to defense counsel's permissible trial strategy. See, *e.g., People v Viaene,* 119 Mich App 690, 693; 326 NW2d 607 (1982), and *People v Grant,* 102 Mich App 368, 374; 301 NW2d 536 (1980), *lv den* 411 Mich 1049 (1981) (failure to call witnesses); *People v Hempton,* 43 Mich App 618, 623; 204 NW2d 684 (1972) (failure to make opening statement); *People v Burns,* 118 Mich App 242, 247-248; 324 NW2d 589 (1982), and *People v Gore,* 25 Mich App 700, 701; 181 NW2d 654 (1970) (decision to waive closing argument).

An examination of defense counsel's conduct at trial in the instant case, taking into account the omissions noted above, has convinced us that defendant was not denied effective assistance of counsel. Defendant's attorney first moved to dismiss the charges on the grounds that defendant's right to a speedy trial and the time limits of the Interstate Agreement on Detainers had been violated. He participated in plea negotiations. He conducted a thorough and able cross-examination of prosecution witnesses. Given the quantity of evidence pointing to defendant's guilt, the threats and attempts by defendant to interfere with his defense, and the fact that defendant had a bench rather than a jury trial, defense counsel performed "at least as well as a lawyer with ordinary training and skill in the criminal law and * * * conscientiously protect[ed] his client's interests, undeflected by conflicting considerations". *People v Garcia,* 398 Mich 250, 264; 247 NW2d 547 (1976), *reh den* 399 Mich 1041 (1977).

Affirmed.