1996 SD 43

**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Charles IRVINE, Defendant and Appellant.**

**No. 19164.**

Supreme Court of South Dakota.

Considered on Briefs Jan. 11, 1996.

Decided April 24, 1996.

Mark Barnett Attorney General, Todd A. Love, Assistant Attorney General, Pierre, for plaintiff and appellee.

Jamie L. Haworth, Sioux Falls, for defendant and appellant.

MILLER, Chief Justice.

[¶ 1] Charles Irvine appeals the denial of motions for substitution of counsel, to proceed pro se, to withdraw his guilty plea to one count of sexual contact with a child under age sixteen, and, to withdraw his admission to habitual offender status. We affirm.

### FACTS

[¶ 2] An information was filed on January 27, 1994, charging Irvine with one count of first degree rape (SDCL 22–22–1(1))[1] and an alternative count of sexual contact with a child under age sixteen (SDCL 22–22–7)[2]. A Part II habitual offender information was also filed alleging Irvine had two prior felony convictions.

[¶ 3] Irvine was released on a personal recognizance bond pending trial. Two days before trial, the court revoked Irvine's bond on the basis that he might pose a danger to others or to the community.

[¶ 4] A pretrial hearing was held the day after Irvine's bond was revoked. At the beginning of the day-long hearing, the court stated on the record that Irvine's bond had been revoked because he, "had indicated suicidal intentions, and there was some concern that [Irvine] might be of harm to himself or others." Irvine's counsel amplified the record, indicating that he was the individual who contacted the court and requested the revocation of Irvine's bond.[3] Counsel conceded he took these actions without Irvine's knowledge or consent. Counsel further indicated his actions were based upon specific communications from Irvine regarding his intention to commit suicide, possibly in the courtroom. Counsel also stated he had received collateral information from Irvine's priest expressing these same concerns.

[¶ 5] After clarification of the reasons for revoking Irvine's bond, Irvine's counsel advised the court that Irvine was requesting the appointment of a new attorney. Irvine's request was based upon an alleged breakdown in trust and communication with his counsel. Counsel concurred in Irvine's assessment that there had been, "a complete breakdown." The court reserved ruling on the motion and proceeded to consider other matters. Irvine's motion for substitute counsel was denied at a later point in the hearing.

[¶ 6] At the close of the pretrial hearing, discussion again turned to the issue of Ir-

---

1. SDCL 22–22–1(1) provides in pertinent part:
 Rape is an act of sexual penetration accomplished with any person under any of the following circumstances:
 (1) If the victim is less than ten years of age[.]
 * * *
 A violation of subdivision (1) of this section is rape in the first degree, which is a Class 1 felony.

2. SDCL 22–22–7 provides in pertinent part:
 Any person, sixteen years of age or older, who knowingly engages in sexual contact with another person, other than that person's spouse if the other person is under the age of sixteen years is guilty of a Class 3 felony.

3. We note that Irvine's appellate counsel did not serve as his trial counsel.

vine's bond. Irvine's counsel indicated he had not changed his position regarding the danger Irvine might pose to himself. Irvine personally addressed the court and requested his release on bond. Irvine's counsel opposed the request and the court continued its order that Irvine be incarcerated during the duration of the trial. Irvine then requested permission to represent himself or appointment of a different lawyer. The court denied the requests and the pretrial hearing was concluded.

[¶ 7] The next morning, a hearing was convened immediately before trial. During that hearing, Irvine once again addressed the trial court regarding his representation. The court again advised Irvine that his counsel would not be changed and the hearing was concluded. Apparently, a plea bargain was struck in the time between the conclusion of the hearing and the time set for the beginning of the trial. A change of plea hearing was conducted and Irvine pled guilty to one count of sexual contact with a child under age sixteen and admitted the allegations of the habitual offender information.

[¶ 8] Prior to the date set for sentencing, Irvine's counsel filed written motions for the trial court to allow Irvine to waive his right to counsel and proceed pro se and to allow Irvine to withdraw his guilty pleas and admissions and proceed with a jury trial on all charges. A hearing was held and all of Irvine's motions were denied. Irvine was sentenced to serve twenty-two years in the penitentiary plus costs and restitution. Irvine appeals.

[¶ 9] **I. Did the trial court abuse its discretion in denying Irvine's motion for substitute counsel?**

 Appointment of substitute counsel is warranted only upon a showing of good cause and where substitution will not unreasonably disrupt the judicial process. (citation omitted). A trial court's decision on a request for substitution or a continuance will not be reversed on appeal absent a showing of an abuse of discretion.
State v. Iron Necklace, 430 N.W.2d 66, 79 (S.D.1988)(quoting People v. Johnson, 144 Mich.App. 125, 133–135, 373 N.W.2d 263, 268

(1985)). This Court further defined the procedures to be followed on a motion for substitution of counsel in State v. Fender, 484 N.W.2d 307, 309 (S.D.1992):

> "[W]hen [a] defendant alleges the existence of a dispute leading to a destruction of communication and a breakdown in the attorney-client relationship, the judge is obligated to inquire whether such allegations are true." [People v. Bass, 88 Mich. App. 793, 802, 279 N.W.2d 551, 555 (1979)]. See also, State v. Haynes, 118 Wis.2d 21, 345 N.W.2d 892 (Wis.Ct.App. 1984).

\* \* \*

> "When a defendant asserts that his assigned lawyer is not adequate or diligent or asserts, as here, that his lawyer is disinterested, the judge should hear his claim and, if there is a factual dispute, take testimony and state his findings and conclusion." People v. Ginther, 390 Mich. 436, 441–442, 212 N.W.2d 922, 924 (1973).

[¶ 10] These procedures were generally followed in this instance. When the issue of Irvine's representation was first presented to the trial court, he was afforded a full and fair opportunity to establish his reasons for seeking different counsel. Some four pages of the hearing transcript are then devoted to a colloquy between the court and Irvine on his reasons for wanting new counsel. Irvine could only articulate that he needed an attorney that he could talk to and that there were a lot of things he didn't understand.

[¶ 11] After the above exchange, the court reserved ruling on the motion for substitution of counsel and proceeded on to other issues. Irvine's counsel went forward to ably and vigorously represent Irvine's position on the various pre-trial issues that had been raised. The trial court then ruled on the motion for substitution of counsel as follows:

> The Motion to Postpone because of the lack of communication by defense between [Irvine] and counsel would normally be a meritorious Motion and would be taken very seriously by the Court. Mr. Irvine, however, has had the benefit of counsel for the past 15 months that this case has been going on ... Mr. Irvine, you may not like

[your counsel] right now, and you may be mad at him and you may decide, what my mother used to say, [to] cut off your nose to spite your face, in other words, not use his advice to help you in this case, but what you are doing by doing that is destroying the chance you do have. [Your counsel] says there is a problem, and technically there could be, it could be recognized as such, but I'm convinced from everything that he's said that he's able to work with you, and it's you, that you have elected not to take his advice and to not discuss things with him. I can't make you do that, I guess, but I can only tell you that it's in your interest to keep in touch with him and visit with him and ask him questions and give him your input and seek his advice in this matter and have his assistance in his trying this case. I'm going to deny the request for a different counsel, and the request for postponement of this case also.

\* \* \*

The ruling of the Court is that he is going to be your attorney, and the only thing I can [ ] tell you is, it's in your interest, and only in your interest, to work with him. It isn't going to affect me one way or the other, or the State one way or the other. And it isn't going to affect [your counsel] one way or the other, it's only going to affect you. Unless you use his advice, your case will be damaged, and it may be damaged beyond repair.

[¶ 12] This ruling aptly points out Irvine's failure to articulate a sufficient reason for appointing substitute counsel in light of the extended period of time this case had been pending for trial. Granting the motion would have only served to further protract the matter. In short, it would have unreasonably disrupted the judicial process. Moreover, the trial court determined that it was Irvine himself who was responsible for any breakdown in communication with his counsel.

[¶ 13] This Court has previously found Michigan authorities persuasive on the issue of motions for substitute counsel. *See Iron Necklace,* 430 N.W.2d at 79 (supreme court explicitly adopts Michigan authorities on substitution of counsel). In *People v. Cumbus,*

143 Mich.App. 115, 371 N.W.2d 493 (Mich.Ct. App.1985), the Michigan Court of Appeals reviewed the denial of a motion for substitute counsel based upon a breakdown in the attorney/client relationship. The court determined the breakdown was the fault of the defendant and ruled that the, "[d]efendant was not entitled to substitution of counsel because the breakdown in his relationship was caused by defendant's admitted refusal to cooperate with his attorney." *Cumbus,* 371 N.W.2d at 496. We agree and find the same situation present in the instant case.

[¶ 14] Irvine places much emphasis on the fact that his counsel joined in and concurred with his motion for substitute counsel. However, we find this to be of little consequence in this case. We agree with the court's rationale in *People v. Harlan,* 129 Mich.App. 769, 344 N.W.2d 300 (Mich.Ct.App.1983). There the defendant's first court-appointed attorney was allowed to withdraw after the defendant threatened to kill him and ordered him off the case. A second attorney was appointed and subsequently entered into plea negotiations. When the plea bargain broke down, the second defense counsel also moved to withdraw from the case because of threats of death and legal action by the defendant. Although counsel indicated he felt he could no longer represent the defendant, he did go forward to represent him at trial. On appeal, the defendant claimed that his counsel was ineffective because the trial court failed to appoint substitute counsel on counsel's representation that the attorney/client relationship had irretrievably broken down. The Michigan court ruled, "[w]e disagree. There was and is no showing that an 'irreconcilable dispute' existed between defendant and his attorney regarding trial strategy or a substantial defense." *Harlan,* 344 N.W.2d at 304.

[¶ 15] Here, despite counsel's concurrence in Irvine's request for substitute counsel, neither he nor counsel made any showing of an irreconcilable dispute regarding strategy or defense. When specifically asked if he felt he could not represent Irvine, counsel merely indicated the problem was that communication was nonexistent because Irvine did not trust him. Thus, counsel's representation

was that the breakdown in the attorney/client relationship was obviously Irvine's own fault, not any substantive disagreement over strategy. As previously observed, a defendant is not entitled to substitution of counsel where the breakdown in the attorney/client relationship is caused by his own refusal to cooperate with his attorney. *Cumbus, supra.* Accordingly, we affirm the trial court's denial of Irvine's motion for substitution of counsel.

### [¶ 16] II. Did the trial court deny Irvine's right to self-representation?

[¶ 17] At the close of the pre-trial hearing the day before trial, Irvine asked if he could represent himself and the court denied the request. After Irvine entered his guilty pleas, Irvine's counsel filed a formal motion to request that Irvine be allowed to waive counsel and proceed pro se. The formal motion was denied after a hearing on the day set for sentencing. Irvine now contends the court's denial of his motions to waive counsel and proceed pro se denied him of his right to self-representation. We disagree.

> The defendant in a criminal action has both a constitutional right to be represented by counsel and a constitutional right to represent himself, whichever he chooses. When a defendant exercises his right to represent himself and waives his right to counsel, his decision must be made voluntarily, as well as knowingly and intelligently.

*State v. Van Sickle,* 411 N.W.2d 665, 666 (S.D.1987) (citations omitted).

[¶ 18] In *Hamilton v. Groose,* 28 F.3d 859 (8th Cir.1994), the defendant succeeded in having a public defender removed from his case. The defendant was to be represented at trial by another public defender. Prior to trial, the defendant filed a motion to have the second public defender relieved of his responsibilities and replaced by another court-appointed counsel. The judge engaged in a "lengthy discussion" with the defendant regarding his motion. *Hamilton,* 28 F.3d at 860. During that discussion, the defendant asked that he be allowed to represent himself. The judge went on to explain to the defendant the difficulties involved with and the consequences of representing himself.

The defendant then equivocated on his willingness to proceed pro se, indicating his first preference was to have new counsel. Apparently, the judge denied both requests and required the defendant to go through trial with the attorney with whom he had expressed dissatisfaction. On a habeas corpus claim that he was denied of his right to represent himself, the Eighth Circuit held:

> To invoke his right to represent himself, a defendant must knowingly, intelligently, voluntarily, and unequivocally waive his right to counsel and state his intention to represent himself. Furthermore, a defendant may not manipulate this right in order to delay or disrupt his trial.
>
> * * *
>
> A criminal defendant's motion to represent himself involves two mutually exclusive constitutional rights: the right to be represented by an attorney, and the right *not* to be represented by an attorney. A court must "indulge in every reasonable presumption against [a defendant's] waiver" of his right to counsel and require the defendant to make a knowing, intelligent, voluntary, and unequivocal request before concluding that he has waived his right to counsel and invoked his right to represent himself. The equivocal way in which [the defendant] made his motion to represent himself [requires a conclusion that his Sixth Amendment right to represent himself was not denied].

*Hamilton,* 28 F.3d at 861–62 (citations omitted)(emphasis original).

[¶ 19] The same conclusion is required in the instant case. Irvine's initial request to represent himself came at the conclusion of a day-long hearing in which substantial argument had already been devoted to Irvine's request for substitute counsel. Thus, at that point in time, it was apparent to the trial court that Irvine's preference was not to represent himself, but, to have another attorney appointed to represent him. As in *Hamilton, supra,* Irvine's impulsive request to represent himself was equivocal and the denial of the request was not a denial of the right to self-representation.

[¶ 20] As to the denial of Irvine's later formal motion to waive counsel and proceed pro se, we observe that the motion was made *after* Irvine had entered his guilty pleas and only five days before the date set for sentencing. All that remained at that juncture was for the trial court to enter judgment and determine punishment. Granting Irvine's motion at that late stage would have only served to permit him to delay and disrupt the proceedings through manipulation of his right of self-representation. This cannot be countenanced. For that reason, we find no violation of Irvine's right of self-representation. *See Hamilton, supra* (defendant may not manipulate the right of self-representation in order to delay or disrupt his trial).

[¶ 21] **III. Did the trial court abuse its discretion in denying Irvine's motion to withdraw his pleas?**

▬▬▬ [¶ 22] As his last issue, Irvine challenges the trial court's denial of his motion to withdraw his guilty pleas.

"The term 'abuse of discretion' refers to a discretion exercised to an end or purpose not justified by, and clearly against, reason and evidence." "The withdrawal of a guilty plea before the imposition of sentence is within the sound discretion of the trial court." No defendant has an "absolute right to withdraw a guilty plea but the trial court's 'discretion in the matter should be exercised liberally in favor of withdrawal, unless it appears that the State has detrimentally relied upon the plea and the prosecution of the defendant has been thereby prejudiced.'" "When deciding whether to allow a criminal defendant to withdraw [a guilty] plea, the trial court must look at the reasons why the plea is sought to be withdrawn and if the request to withdraw is obviously frivolous, the trial court need not grant it."
*State v. Engelmann*, 541 N.W.2d 96, 100 (S.D.1995) (citations and footnote omitted).

[¶ 23] The court denied Irvine's motion to withdraw because of: the time the case had already been pending; the further delay before a trial could be rescheduled; the fact it would leave the witnesses in limbo; the court's recollection that Irvine knew what he was doing when he entered his plea; the expense to the State if its previous pre-trial efforts had to be repeated; and, the additional worry to the victim. We find no abuse of discretion in this decision.

[¶ 24] In *State v. Wahle*, 521 N.W.2d 134 (S.D.1994), a defendant appealed the denial of a pre-sentence motion to withdraw a guilty plea on the basis that he misunderstood the 300 year cap on the sentence he would receive as a result of a plea bargain. We observed:

the withdrawal of a guilty plea, even prior to sentencing, is not subject to the whim or caprice of the defendant. Rather, it is a matter that lies solely within the discretion of the trial court. Although, before sentencing, that discretion is to be exercised liberally in favor of withdrawal, the trial court must still look at the reasons why withdrawal is sought. If ... there is sufficient objective proof on the record of the defendant's misunderstanding of the maximum sentence he faced, then the plea is considered to have been entered without full knowledge of the consequences and involuntarily. Under these circumstances, the trial court's discretion should favor withdrawal of the guilty plea. However ... if the request to withdraw is frivolous, the trial court need not grant it.

*Wahle*, 521 N.W.2d at 137 (citations omitted).

[¶ 25] We went on to conclude in *Wahle* that there was no abuse of discretion in the denial of the defendant's motion to withdraw his plea because the terms of the plea bargain and maximum sentence were made plain at the time the defendant entered his plea and the defendant had unhesitatingly indicated his understanding of those terms. We find the same to be true in the instant case.

[¶ 26] At the time Irvine entered his plea, the prosecutor carefully set forth the terms of the plea bargain: that Irvine enter a guilty plea to the charge of sexual contact with a child under age sixteen; that he admit the allegations of the habitual offender information; that the maximum possible penalty as a habitual offender would be twenty-five years; and, that there was no agreement as to sentencing. Immediately after the prose-

cutor's elocution of the plea agreement, the court went forward and carefully explained the charges and the maximum possible penalty Irvine would face if he was convicted of both the sexual contact charge and as an habitual offender. Irvine indicated he understood the explanation. The court then went on to meticulously outline Irvine's constitutional rights including: the right to plead not guilty; the right to require the state to prove each element of the charges beyond a reasonable doubt; the right to representation by a lawyer at all times; the right to a speedy, public trial by a judge or jury of the county where the offense allegedly occurred; the right to a jury trial and a unanimous determination of guilt by the jury; the right to confront adverse witnesses; the right to subpoena witnesses; the presumption of innocence; the privilege against self incrimination; and, the fact that a plea of guilty would waive these rights. Throughout the court's discourse on these matters, Irvine repeatedly indicated his understanding of the explanation.

[¶ 27] It was only after the foregoing explanation that the court asked Irvine for his plea to the sexual contact charge. Irvine pled "[g]uilty." The court then inquired as to the accuracy of the prior convictions alleged in the Part II habitual offender information. Irvine readily admitted both convictions.

[¶ 28] As in *Wahle, supra,* we find that, in light of the foregoing procedures, Irvine's claims of misunderstanding, misapprehension and involuntariness ring hollow. All pertinent facts and consequences were meticulously and methodically explained to him and he clearly indicated his understanding of his plea and its effects. Therefore, we find no abuse of discretion in the trial court's denial of Irvine's motion to withdraw his guilty pleas.

[¶ 29] Affirmed.

[¶ 30] SABERS, KONENKAMP and GILBERTSON, JJ., concur.

[¶ 31] AMUNDSON, J., dissents.

---

* Irvine: Can I represent myself in this?

AMUNDSON, Justice (dissenting).

[¶ 32] I respectfully dissent on Issue II.

[¶ 33] In *State v. Thomlinson,* 78 S.D. 235, 237, 100 N.W.2d 121, 122 (1960), we recognized that "[i]t is not . . . within the province of a court in every case to require an unwilling defendant to be represented by unwanted counsel." We went on to state that if the defendant is mentally competent and *sui juris* (not under a legal disability) "an accused does have the right to defend himself without the aid and assistance of an attorney." *Id.* at 238, 100 N.W.2d at 122–23 (citations omitted). Neither the United States Constitution nor the South Dakota Constitution requires "counsel [to] be forced upon a defendant." *Id.* at 237, 100 N.W.2d at 122; *see also* SDConstArt VI, § 7. We reiterated this proposition in *State v. Van Sickle,* 411 N.W.2d 665, 666 (S.D.1987) (citing *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975)). "The defendant in a criminal action has both a constitutional right to be represented by counsel and a constitutional right to represent himself, *whichever he chooses.*" *Van Sickle,* 411 N.W.2d at 666 (emphasis added) (citations omitted). After two hearings where the request for substitute counsel was denied, Irvine requested to represent himself. Irvine was not allowed his choice, rather the trial court succinctly denied his request.*

[¶ 34] A defendant must voluntarily, knowingly and intelligently refuse the right to counsel. *Van Sickle,* 411 N.W.2d at 666 (citations omitted). Part of this determination includes the trial court's determination that the defendant is mentally competent to proceed *pro se. Thomlinson,* 78 S.D. at 238, 100 N.W.2d at 122–23. In addition, for there to be a knowing and voluntary waiver, a trial court should advise a defendant of the "dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Faretta,* 422 U.S. at 835, 95 S.Ct. at 2541, 45 L.Ed.2d at 582 (quoting *Adams v. United States ex rel. McCann,* 317 U.S. 269, 279, 63 S.Ct. 236, 242, 87 L.Ed. 268, 275 (1942)); *see also Van Sick-*

---

Court: No.

*le,* 411 N.W.2d at 666; *Thomlinson,* 78 S.D. at 237, 100 N.W.2d at 122–23. The trial court did not determine that Irvine was incompetent to represent himself. We have stated that when defendants elect to represent themselves, even after they understand all of the dangers, they should be allowed to do so. *Thomlinson,* 78 S.D. at 238, 100 N.W.2d at 123. Unfortunately, the trial court did not follow the correct procedure in determining whether Irvine could represent himself so this stage was never reached.

[¶ 35] Forcing an attorney upon an unwilling defendant does not serve any constitutional purpose, in fact, it violates the defendant's right to defend himself. *Faretta,* 422 U.S. at 817, 95 S.Ct. at 2532, 45 L.Ed.2d at 572. This right is given to Irvine for it is "he who suffers the consequences if the defense fails." *Id.* at 820, 95 S.Ct. at 2533, 45 L.Ed.2d at 573. In fact, the trial court reiterated this by stating "it's [the representation of counsel that is] only going to affect you." However, the purpose of counsel is to aid Irvine, "not an organ of the State interposed between an unwilling defendant and his right to defend himself personally." *Id.* "An unwanted counsel 'represents' the defendant only through tenuous and unacceptable legal fiction." *Id.* at 821, 95 S.Ct. at 2534, 45 L.Ed.2d at 573.

[¶ 36] The majority accepts the State's argument that, since Irvine did not unequivocally ask to proceed *pro se,* the trial court was not mandated to stop the proceedings and make an inquiry as to Irvine's request. This assertion seems to be based on the facts in *Van Sickle* where the defendant made an "unequivocal demand of self-representation." 411 N.W.2d at 666. At the time of Irvine's request, the trial court should have first determined whether Irvine was competent and then began the litany of rights and benefits that he would forego by electing to proceed *pro se.* *See Van Sickle,* 411 N.W.2d at 668 (Miller, J. concurring specially). Instead, the trial court determined without making a factual basis that Irvine should not proceed *pro se,* therefore, the trial court never allowed this constitutionally protected option for Irvine. Within one hour after requesting new counsel for a second time, Irvine accepted a plea bargain rather than proceed with the counsel that was forced upon him. This record clearly depicts a situation where an attorney was forced upon a defendant. I would reverse and remand for an appropriate determination of whether Irvine desires to represent himself in the matter, but not for the appointment of substitute counsel.