**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Thien Thanh LA, Defendant and Appellant.**

No. 18963.

Supreme Court of South Dakota.

Argued Oct. 17, 1995.

Decided Nov. 29, 1995.

Mark Barnett, Attorney General, Jason M. Harris, Assistant Attorney General, Pierre, for plaintiff and appellee.

David R. Strait, Scott R. Bratland, of Austin, Hinderaker, Hopper, Strait & Bratland, Watertown, for defendant and appellant.

SABERS, Justice.

Thien Thanh La appeals his convictions on two counts of grand theft by deception.

## FACTS

La worked at Dakota Sioux Casino near Watertown. Eng Lam owned a Chinese restaurant in Watertown at which La frequently ate and occasionally helped. Lam testified La asked if Lam wanted to purchase an interest in a poker table at the casino for $18,000. La told Lam he would only deal in cash and there would be no paperwork identifying Lam as the owner because only employees could purchase the interests. On December 1, 1993, Lam gave La the money, which he took from his own bank accounts and borrowed from his daughters and an employee at his restaurant.[1] La gave Lam

---

1. Lam testified he gave La $18,000 in cash on December 1, 1993, and $17,000 in cash on January 15, 1994. On November 30, 1993, he wrote a $6,500 check for "cash" and put La's name in the memo. He also wrote a check for "cash" on

$1660 the next month as a return on his investment.

Lam testified La approached him about buying a second interest in a poker table and he agreed. Lam stated La told him the interest would cost $18,000 but he only had $17,000 and La offered to pay the remaining $1,000. Lam gave La $17,000 on January 15.

When La left for a trip without leaving any papers indicating Lam's ownership, Lam became worried. His daughter went to the casino to ask one of the managers whether a person could purchase an interest in a poker table. The manager told her "the Tribe" (the Sisseton–Wahpeton Sioux Tribe) owned the tables and no individual could own an interest.

La claimed Lam asked him to travel to Vietnam to find and marry a woman. Lam would pay for La's trip and for the woman to come back to the United States and the woman would belong to Lam as a "concubine." La claimed he was given a total of $3,300 for his trip, and that Lam created the story about purchasing a poker table so Lam's family would not be suspicious about the money. La went to Vietnam in January, 1994, and was arrested in connection with this case upon his return to the United States in April, 1994.

### 1. Did the Trial Court Err in Denying the Proposed Instruction on Direct and Circumstantial Evidence?

■ The jury was not instructed on direct and circumstantial evidence even though La proposed South Dakota pattern jury instruction Number 1–14–1. This court has held a trial court committed no error when it refused a defendant's proposed circumstantial evidence jury instruction in *State v. Fast Horse*, 490 N.W.2d 496, 499 (S.D.1992).

*The failure or refusal to give an instruction on circumstantial evidence is not error where there is direct evidence that the defendant committed the act charged.* So also it would not be error to fail or refuse to instruct upon circumstantial evidence where … the state relied on direct evidence to prove the acts of crime and the identity of the perpetrator *and only relied on circumstantial evidence to prove intent.*

*Id.* (emphasis added) (citations omitted).[2]

■ Lam testified that he gave La a total of $35,000 for the purchase of two interests in poker tables. Lam's testimony is direct evidence against La. La identifies several instances of circumstantial evidence which include: an assistant manager of the casino stated Lam came into the casino and looked as if he was checking on his investment; Lam wrote La's name in the memo on the $6,500 check for cash; Lam's daughter testified she saw her father give La a brown paper bag, which Lam testified was cash for the poker table; a co-worker at the casino testified he loaned La a gun because La was concerned about having a large amount of money; co-workers testified La gambled on football games; on cross-examination, La admitted he paid his bad checks in cash; and La telephoned the Lams to tell them his return would be delayed.

La cites numerous examples of circumstantial evidence, which tend to corroborate Lam's statements. In fact, each instance of circumstantial evidence either tends to support the direct evidence or reflects on the issue of intent. Therefore, the case against La was not "substantially based" on circumstantial evidence. The trial court did not err in refusing to give La's proposed instruction on direct and circumstantial evidence. *Fast Horse*, 490 N.W.2d at 499.

a different account in the amount of $2,000 on November 29, 1993.

Lam stated he borrowed a total of $6,200 from his daughter, Li Lam, $7,800 from an employee at his restaurant and that his wife had $5,200 in cash in their home which he used for the transaction.

Both Eng Lam and his daughter, Meng Lam, testified that she loaned him a total of $7,300. She wrote a check for "cash" for $4,300 on November 30, 1993. She testified that she

loaned her father $3,000 from her savings in January.

2. In *Fast Horse*, the trial court did not give the portion of the instruction about "prosecutions based substantially on circumstantial evidence." *Fast Horse*, 490 N.W.2d at 498. However, an instruction defining direct and circumstantial evidence was given. No definitions were given here.

### 2. Did the Trial Court Allow Improper Opinion Testimony?

Dana Robertson, an assistant manager at Dakota Sioux Casino testified that he saw Lam at the casino in 1992, but that Lam started coming into the poker area only in and after December, 1993. Robertson testified Lam did not play poker, but spoke to La and walked around the poker room, "like he was inquisitive of something . . . [l]ike he was looking out for something that was his or partially his, or like he had an interest in something." La objects to this testimony as an opinion that Lam was checking on his investments at the casino. State argues its admission was not an abuse of discretion because Robertson personally saw Lam at the casino and spoke to his daughter later about whether someone could purchase an interest in a table. State argues Robertson's opinion clarified his testimony for the jury.

SDCL 19–15–1 provides:

If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are

(1) rationally based on the perception of the witness and

(2) helpful to a clear understanding of his testimony or the determination of a fact in issue.

This rule is qualified by SDCL 19–14–2, which provides in part:

A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter[.]

*State v. Bittner,* 359 N.W.2d 121, 126 (S.D. 1984). "Consequently, a lay witness can give testimony *only* if he has personal knowledge of the matter." *Id.* (citations omitted) (emphasis original).

Robertson testified that he saw Lam at the casino looking curious, but formed an opinion that Lam was checking on his investments only after he spoke with Lam's daughter about whether someone could purchase an interest in a poker table. Although his opinion may have been "helpful to a clear understanding of his testimony," it was not rationally based on his observation of Lam. Admission of such testimony was error. However, from Robertson's description of Lam looking curious and entering the poker area to speak with La, the jury could have reached a conclusion that Lam was evaluating his investment. Admission of the opinion was not a significant error requiring reversal. *See* SDCL 19–15–1(1).

### 3. Evidence of "Other Acts"

The State introduced evidence that La gambled at poker and on football games[3], wrote bad checks[4], and borrowed a gun[5].

Defense counsel objected to evidence of La gambling as irrelevant and without

---

**3.** La denied gambling on football games. Testimony about gambling came from two sources. Jerome Stone, a co-worker at the casino, testified during the State's rebuttal that La told him he bet on football games and lost $1,500 one weekend. There was no objection to this testimony.

Dana Robertson, an assistant manager at the casino, testified during the State's case-in-chief that La often checked out of work early to gamble at the casino. He testified "[La] gambled on anything and everything. It got to be pretty bad. He would bet massive amounts on football games on Sundays, parlays." Robertson also testified that La told him La would lose $2,000 or $3,000 in one Sunday afternoon, but that he didn't always lose.
Defense counsel objected based on relevancy and lack of foundation. The objections were overruled.

**4.** La testified on cross-examination that he wrote $1,400 in insufficient funds checks to a local

casino. He testified he paid the deputy sheriff in cash for the checks with winnings from gambling.

Defense counsel objected to this evidence as irrelevant. The objection was overruled.

**5.** Jerome Stone testified he worked with La at the casino and loaned him the gun. He indicated he was concerned about the gun because La telephoned him to say he was in jail, having been pulled over in New Jersey and a search of his car revealed a large amount of cash and the gun. Initially, he stated he did not know why La wanted the gun, but on cross-examination by defense counsel, he indicated he gave the gun to La because La was concerned about having a large amount of money. La denied asking for a gun or having a large amount of cash.

Defense counsel objected to the evidence as improper rebuttal, as leading and irrelevant. The objections were overruled.

foundation. He did not object on the basis of "other act" evidence under SDCL 19–12–5, which requires notice and a balancing test on the record. A general objection on relevancy grounds is not sufficient to preserve the record for other acts if the evidence is relevant. *State v. Rufener*, 392 N.W.2d 424, 427 (S.D. 1986) (*Rufener I*), modified, 401 N.W.2d 740 (1987). Here, the evidence is relevant.

■ An objection was made to evidence of the gun because it was improper rebuttal testimony, a leading question, and irrelevant. Defense counsel did not object that possession of the gun was an "other act." No objection was made from which the trial judge could have understood "the precise question upon which he ha[d] to rule and which could relieve [the judge] of the burden of searching for the basis of the objection." *Rufener I*, 392 N.W.2d at 427. Therefore, this issue was not preserved for appeal on "other acts" grounds. *Id.*[6]

Defense counsel moved for a mistrial at the close of the State's case, arguing the State had not informed him of the evidence of bad checks. The motion was denied.

Defense counsel then made a motion in limine to prohibit the State from introducing evidence or cross-examining La about the bad checks. The State did not present the evidence about the bad checks during its case as it did not find out about them until the day before the motion. The State argued it would present the evidence "depending on what Mr. La says to show that he was in possession of a large amount of cash."[7] The State argued, "if [writing the bad checks] is a prior bad act, it shows motive. It shows intention." The trial court did not enter a balancing test on the record and denied the motion. The trial court ruled this evidence could come up on rebuttal or cross-examina-

tion depending on La's testimony. On direct examination, La testified he won $1,750 in November and $2,500 in December. On cross-examination, he testified this was the money he showed to coworkers. The State attempted to impeach him and questioned him about gambling debts. When he denied this, the State asked about the insufficient funds checks and how La gained the money to pay the sheriff in cash. La testified he paid the sheriff with gambling winnings.

■ La claims evidence of the bad checks was admitted as a "bad act," and that the trial court should have balanced the act's probative value versus its prejudicial effect. We disagree. In this instance, the bad check evidence was foundation for the evidence that La paid the checks in cash two weeks after he was given $18,000 by Lam. Harm came to La, not from the fact that he had written bad checks, but from the fact that he paid them off in cash.[8] This is not "propensity" or "prior bad acts evidence." It is contemporaneous background for the charged crime. It is contemporaneous and related to the crime rather than prior unrelated "other acts." Even evidence of an uncharged offense arising out of the same transaction or series of transactions as the charged offense is not an "extrinsic" offense within the meaning of 404(b), and is therefore not barred by the rule. *United States v. Dula*, 989 F.2d 772, 777 (5th Cir.1993), *cert. denied* — U.S. ——, 114 S.Ct. 172, 126 L.Ed.2d 131 (citing *U.S. v. Simpson*, 709 F.2d 903, 907 (5th Cir.1983), *cert. denied*, 464 U.S. 942, 104 S.Ct. 360, 78 L.Ed.2d 322). This evidence is relevant to the crime and not unfairly prejudicial. It tends to corroborate Lam's explanation and version of the charged act rather than La's version. Therefore, there is no

---

**6.** In *Rufener II, State v. Rufener*, 401 N.W.2d 740 (S.D.1987), this court found that if there was no evidentiary purpose for the gun, an objection as to relevancy was sufficient if "the objection could not have been obviated had the same been specifically pointed out." *Id.* at 743.

However, in *State v. Olson*, 408 N.W.2d 748, 752 (S.D.1987), since the gun was never " 'paraded before the jury' nor received into evidence," and testimony of its existence was "relevant to show preparation to commit the crime and intent," where defendant was going to purchase illegal

drugs and was carrying a large amount of cash, the gun was held to be "directly tied to the crime" and therefore relevant. The same considerations would apply in this case.

**7.** Co-workers testified that La showed them large amounts of cash.

**8.** For example, if La made a $1,400 cash payment on a car loan, it would be relevant and damaging to La and not subject to "other acts" analysis.

showing of an abuse of discretion under these circumstances.

### 4. Was Evidence Sufficient to Convict on Two Counts of Grand Theft?

La was convicted of two counts of grand theft. The first was for obtaining money on December 1, 1993 and the second for obtaining money on January 15, 1994. La claims he could be found guilty of only one grand theft. He argues that "in a series of takings from the same individual, there is a single theft if the takings are pursuant to one continuing impulse, intent, plan or scheme." He argues the State should have proved each incident was the result of a separate independent impulse or intent. He cites *State v. Johnston*, 478 N.W.2d 281 (S.D.1991), claiming: "Whether there were separate independent takings or one general scheme *is a question of fact for the jury*, based on the particular circumstances of each case." *Id.* at 283 (citations omitted) (emphasis added).

■ *Johnston* and this case are factually distinguishable. In *Johnston*, the defendant was charged with 19 counts of grand theft when 19 cattle were found in his pasture with altered brands. There was no evidence whether the cattle were taken one at a time or all at once. In this case, Lam testified that La approached him on December 1, 1993, and sold him an interest in a poker table. He invested in a second poker table only after a second similar offer from La in January. The jury was instructed:

> A separate offense is charged in each of the counts of the Information. You must separately consider each count and the evidence which applies to it. The fact that you may find the defendant guilty or not guilty on any one count of the Information must not control or influence your verdict on any other counts of the Information.

After receiving this instruction, the jury entered two separate guilty verdicts. The evidence showed two distinct offers and two distinct investments. The jury found La guilty on each count and there was sufficient evidence to support the verdict.

Affirmed.

MILLER, C.J., and AMUNDSON, KONENKAMP and GILBERTSON, JJ., concur.