1996 SD 96

**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Greg Allen BARBER, Defendant and Appellant.**

**No. 19019.**

Supreme Court of South Dakota.

Argued Jan. 9, 1996.

Decided July 31, 1996.

Mark Barnett, Attorney General, Sherri Sundem Wald and Tony L. Portra, Assistant Attorneys General, Pierre, for plaintiff and appellee.

Michael J. Butler of Butler & Nesson, Sioux Falls, for defendant and appellant.

STEELE, Circuit Judge.

[¶ 1] Gregory Allen Barber (Barber) appeals his conviction for possession of a controlled substance, conspiracy to distribute a controlled substance, and possession of marijuana. Judgment was entered and filed on November 7, 1994.[1]

[¶ 2] We affirm.

## FACTS

[¶ 3] On February 15, 1994, an unidentified Hispanic or Native American man, using the name Tom Perez, brought a package to DHL Airways overnight delivery office in Phoenix, Arizona. The man requested that the package be delivered to "Jim Schultz" at the Quality Inn in Rapid City, South Dakota. After the unidentified man left the office, an employee who was suspicious exercised the company's right to inspect the package and opened it. She discovered a large knotted plastic trash bag inside. The police were notified and a substance identified as cocaine was discovered inside the trash bag. The Arizona police forwarded the package to Division of Criminal Investigation Agent Kevin Thom in Rapid City. Thom, dressed as a delivery person, attempted to deliver the package to "Jim Schultz" at the Quality Inn. The desk clerk informed Thom that two men had been asking about the package earlier, but that no Jim Schultz was registered at the hotel at that time. Later, one Eli Hunt arrived at the Quality Inn to pick up the package. The desk clerk immediately called Agent Thom, who brought the package to the hotel and delivered it to Hunt. Hunt, followed by close surveillance, eventually took the package to the Tee Pee Campground, where he lived with Barber.

[¶ 4] Approximately twenty minutes later, law enforcement officers entered the residence, arrested Barber and Hunt, and found the "Schultz" package unopened in Barber's bedroom. Cocaine was discovered inside a cribbage board which belonged to Hunt; marijuana and other drug paraphernalia, including scales, baggies, and a cutting agent, were also found in the residence, along with five receipts for overnight mail to Arizona.

[¶ 5] The police returned to the Quality Inn and showed the desk clerk a photo lineup. The clerk identified Barber as one of the men who had attempted to pick up the package before Hunt arrived.

[¶ 6] Barber and Hunt were both charged with possession of a controlled substance, possession of a controlled substance with intent to distribute, conspiracy to distribute a controlled substance, and possession of marijuana. Both defendants were found not guilty of possession with intent to distribute; Hunt was found not guilty and Barber was found guilty of conspiracy to distribute a controlled substance; and, both defendants were found guilty on the remaining counts. Barber's request for a new trial was denied.

## ISSUES

[¶ 7] Barber raises the following issues on appeal:

[¶ 8] **I. Did the trial court err in admitting the following as prior bad acts evidence under SDCL 19–12–5:**

**A. The five (5) receipts found in Barber's residence;**

**B. The testimony of Ronnie Horse, who claimed to have picked up packages for Barber in the past;**

**C. The testimony of Joseph and Frank Boscano, two brothers who testified they had observed Barber receive a package containing cocaine in the past.**

[¶ 9] **II. Did the trial court err in admitting purported expert testimony of drug enforcement Agent Larry Johnson?**

[¶ 10] **III. Does the acquittal of co-defendant Hunt on the conspiracy charge require a judgment of acquittal as to Barber on the conspiracy charge?**

[¶ 11] **IV. Did the trial court abuse its discretion in denying Barber's motion for a new trial?**

---

1. Counsel on appeal was not trial counsel.

## ANALYSIS

### [¶ 12] I. Prior Bad Acts Evidence

[1, 2] [¶ 13] SDCL 19–12–5 provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, separation, plan, knowledge, identity, or absence of mistake or accident.

[¶ 14] Whether to admit prior bad acts into evidence is a matter within the discretion of the trial court. This Court may not overrule the trial court's decision to admit prior bad acts evidence without a clear showing of abuse of that discretion. The test is not whether we would make a similar ruling, but rather whether a judicial mind, in view of the law and the circumstances, could have reasonably reached the same conclusion. *State v. Rufener*, 392 N.W.2d 424 (S.D.1986).

[¶ 15] At the trial level, the evidence must pass a two-prong test before it may be admitted by the trial court: (1) the intended purpose for offering the other acts evidence must be relevant to some material issue in the case, and (2) the probative value of the evidence must substantially outweigh any prejudicial effect. *State v. Krebs*, 504 N.W.2d 580 (S.D.1993); *State v. Werner*, 482 N.W.2d 286 (S.D.1992). In addition to passing the two-prong test, the trial court must identify the specific exception under which the evidence is to be admitted. *State v. Chapin*, 460 N.W.2d 420 (S.D.1990).

### [¶ 16] A. The receipts.

[¶ 17] When searching Barber's residence, the police seized five (5) overnight/express mail receipts. These receipts contain different names and three different Arizona addresses; however, the return address on four of the receipts, was Barber's residence, and one was Kadoka, South Dakota. The State offered the receipts as substantive evidence to circumstantially show a connection between Barber and the State of Arizona, and alternatively as other act evidence

pursuant to SDCL 19–12–5. The court found that although the receipts did not suggest any criminal act per se, they were relevant to show overnight or express mail package dealings to and from Arizona and to and from South Dakota and constituted direct evidence bearing upon the crimes charged. The court also ruled that the evidence was relevant under SDCL 19–12–5 to show a pattern, plan, or scheme that the defendants were engaged in. The court concluded that the probative value of the evidence substantially outweighed any prejudicial effect and granted the State's request to offer the evidence in its case in chief.

[¶ 18] We agree with the trial court that the receipts constituted direct evidence concerning certain elements of the crimes charged. An element of the offense of possession of a controlled substance with intent to distribute is that the defendant specifically intended to distribute a quantity of the controlled drug by delivering it to another person. An element of the offense of conspiracy is that the defendant entered into an agreement with others to distribute a controlled substance. The receipts tended to establish a connection between Barber and the State of Arizona and also served as the foundation for an expert opinion[2] that the receipts, together with the circumstances of the mailing of the package from Arizona, indicated that drugs were being shipped from Arizona to South Dakota for resale. The receipts were therefore relevant to circumstantially establish specific intent to distribute and the existence of an agreement. The purpose of the offer in this case was not to show that Barber was a "bad man," but as evidence of which was intricately related to the facts of the case. Such evidence is admissible without reference to SDCL 19–12–5. *U.S. v. Monzon*, 869 F.2d 338 (7th Cir.1989); *State v. Dokken*, 385 N.W.2d 493 (S.D.1986); *State v. Floody*, 481 N.W.2d 242 (S.D.1992); *State v. Olson*, 408 N.W.2d 748 (S.D.1987).

[¶ 19] The trial court properly weighed the probative value of the evidence against the danger of unfair prejudice as required by

---

**2.** This testimony is discussed later in this opinion.

SDCL 19–12–3.[3] Prejudicial evidence is that which has the capacity to persuade the jury by illegitimate means which results in one party having an unfair advantage. Evidence is not prejudicial merely because its legitimate probative force damages the defendant's case. *State v. Goodroad*, 442 N.W.2d 246 (S.D.1989). The probative value of the receipts was that they tended to establish a connection between Barber and a person or persons in Arizona. The receipts had legitimate probative force, and their admission into evidence was not erroneous.

### [¶ 20] B. Testimony of Ronnie Horse.

■ [¶ 21] Ronnie Horse testified in a motion hearing on June 24, 1994, that on two prior occasions Barber paid him to pick up packages, once at the "Quality Inn" Motel and again at "Ho–Jo's" in Rapid City. Horse testified that Barber's name was not on either package, and that he (Horse) was paid approximately $100 per package for his services. Horse later recanted his testimony to a defense investigator, and still later retracted his recantation in statements made to a state agent. Horse refused to testify at trial, so the trial court declared him unavailable pursuant to SDCL 19–16–29(2)[4] and a transcript of the motions hearing was read to the jury. The jury was also allowed to hear a tape recording of the conversation between Horse and the defense investigator, in which Horse originally recanted his testimony. The State investigator was called as a witness to testify as to Horse's retraction of the statements made to the defense investigator.

[¶ 22] Barber contends that Horse's testimony was of minimal probative value because Horse was unable to identify what was in the previous packages. As a result, he asserts, the testimony provides only a "mere implication" of illegal activity. He further asserts that the recantation and later retraction of the recantation damages his credibility as a witness to such an extent that none of the

testimony should have been allowed into evidence. We reject the argument.

[¶ 23] Horse's testimony was that he was twice hired to pick up a package for Barber; that both times the packages were delivered under fictitious names; and that one of the two times he picked up a package at the very same motel where the "Schultz" package was delivered. The testimony was clearly relevant to show a particular pattern, plan, or scheme. Horse was fully cross-examined at the motions hearing, so that there was no deprivation of Barber's right to confront and cross-examine witnesses. *State v. Lufkins*, 381 N.W.2d 263 (S.D.1986). Because Horse later recanted his testimony and then retracted the recantation goes to the weight to be given to the testimony and not to its admission. *Olesen v. Lee*, 524 N.W.2d 616 (S.D.1994). The jury was given full opportunity to hear all of the testimony to give it the credit which they felt it deserved. It is the function of the jury, and not the court, to examine the credibility of each witness, and to give appropriate weight to that witness's testimony. Admission of the testimony of Ronnie Horse was not erroneous.

### [¶ 24] C. Testimony of Joseph and Frank Boscano.

■ [¶ 25] Barber at one time had an automobile repaired at "J.B.'s Body & Paint" owned by Joseph Boscano. At that time, Frank Boscano, Joseph's brother, also worked at the body shop. Both brothers were granted immunity for their testimony. Frank Boscano testified that he had received a package in the summer of 1990 from a wrecking yard. Frank signed for the package and left it for his brother. Frank later observed his brother and Barber opening the box, and removing a white powdery substance from a set of teardrop mirrors. A few days later, Frank received a white powdery substance from his brother, who said the substance had come from Barber. Frank

---

3. SDCL 19–12–3 states: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue waste of time, or needless presentation of cumulative evidence."

4. SDCL 19–16–29(2) provides: " 'Unavailability as a witness' includes situations in which the declarant: (2) persists in refusing to testify concerning the subject matter of his statement despite an order of the court to do so[.]"

used the substance, and stated that it made him "feel good."

[¶ 26] Joseph Boscano testified that the box in question contained two teardrop mirrors, and that each mirror contained a ziploc baggie with a white substance in it. Barber told Joseph "there should be four to six here," which Joseph interpreted to mean four to six ounces of cocaine. Joseph further testified that he later had an argument with Barber about Barber's use of the business for shipments of this nature, and that he later reduced Barber's bill by $2,000 in exchange for some of this substance.

[¶ 27] Joseph Boscano's testimony was inconsistent with his prior statements made to the police. Joseph testified that he did not have an attorney when he first began talking to the police, and that he told a different story to the police to protect himself.

[¶ 28] Barber argues that before other acts testimony may be admitted, the court must determine that the evidence has sufficient probative value to support a permissive inference that the defendant did commit the prior bad act.

[¶ 29] This Court has previously rejected the notion that bad acts testimony must meet any standards of credibility before it may be admitted into evidence. In *State v. McDonald,* 500 N.W.2d 243, 246 (S.D.1993), this Court stated:

> [I]n *[State v.] Sieler* [397 N.W.2d 89 (S.D. 1986)] , we rejected adopting an additional requirement for admission of bad acts evidence under SDCL 19–12–5. The reliability of the evidence sought to be admitted is already an inherent part of the tests the court must perform. We decline to adopt an additional standard for a trial court to balance before deciding to admit or exclude prior bad acts. (citations omitted).

*See also Huddleston v. United States,* 485 U.S. 681, 691, 108 S.Ct. 1496, 1502, 99 L.Ed.2d 771, 783–84 (1988). The trial court entered specific findings of fact and conclusions of law in performing the balancing test required by SDCL 19–12–5. The admission of the testimony of the Boscano brothers was not erroneous.

[¶ 30] **II. Expert testimony of DEA Agent Larry L. Johnson.**

[¶ 31] DEA Agent Larry L. Johnson was allowed to testify as an expert witness regarding several aspects of drug trafficking. Johnson testified as to the street value of the cocaine, and gave his opinion as to the intended use of the cocaine which had been shipped from Arizona to South Dakota. The trial court reasoned that the testimony was admissible "because the common person would not have any expertise in drug trafficking, and an expert opinion would be helpful." Agent Johnson testified as follows:

Q. (Prosecutor) Based upon all of the receipts which I have identified that you have reviewed and the DHL receipt which you are currently holding, . . . are you able to draw any particular conclusions?

A. (Johnson) The DHL receipt here, Exhibit 70, of course, is the receipt of the package that came back into Rapid City, South Dakota, from Phoenix, Arizona with the two ounces of cocaine. The other receipts here are for packages leaving the Rapid City area and going into the Phoenix, Arizona area. There are three different types of facilities used here: one Federal Express, one United Parcel Service, and two Express Mail. In our investigation that we have done in the past on the shipment and receipt of drugs through the package delivery system, the United Parcel Service, DHL, Federal Express, it is common for the individuals to ship the money to the supplier sometimes in increments. As they collect it from the sale of drugs, they will package that money and ship it. They will always ship cash because you can't trace cash where you could trace a cashier's check or anything like that. Any financial document can be traced. They mailed their cash back to the supplier of the drugs. He would then in turn ship them back another package containing more drugs.

Q. (Prosecutor) Have you had an opportunity to review the dates and does that make a difference also with your conclusion?

A. (Johnson) Yes. There is one of these Airway Bills here that is dated, I believe,

about four days prior to the receipt of this package. In my experience as an investigator, having worked probably 30 or 40 cases involving the shipment of drugs through the UPS and Federal Express, this would be an indication to me that this package left Rapid City about four days prior to the arrival of this one, had the money in this, it paid for the drugs that came back.

[¶ 32] Later, Johnson testified:

Q. (Prosecutor) Based upon your training and experience and now having reviewed every piece of evidence that was just done, are you able to form an opinion on how the business was being conducted here?

A. (Johnson) Yes.

Q. (Prosecutor) What is that opinion?

A. (Johnson) That cocaine was being shipped in from Arizona into Rapid City for resale.

[¶ 33] Barber contends that Johnson testimony invades the ultimate issue before the jury and that the trial court failed to weigh the prejudicial impact of the testimony against its probative value.

[¶ 34] SDCL 19–15–2 addresses when expert testimony is appropriate:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, expertise, training or education may testify thereto in the form of an opinion or otherwise.

[¶ 35] The trial court has broad discretion concerning the qualifications and admissibility of expert testimony. This Court will not reverse the admission of expert testimony absent a clear showing of abuse of that discretion. *State v. Hill*, 463 N.W.2d 674 (S.D. 1990); *Peery v. Department of Agriculture*, 402 N.W.2d 695 (S.D.1987); *State v. Iron Shell*, 301 N.W.2d 669 (S.D.1981).

[¶ 36] At the time of trial, Johnson had worked as a drug enforcement agent for over twenty-three years, and he had taken several courses in drug investigations. He

had established the drug detail investigative unit at the Los Angeles International Airport, where he had been assigned for sixteen years. He also investigated between thirty and forty cases involving the shipment of drugs through the UPS or Federal Express. His knowledge, skill, training, education, and experience with drug trafficking, qualified him as an expert in this case. The trial court reasoned, and we agree, that the average lay person would not have expertise in drug trafficking, and expert testimony would be helpful.

[¶ 37] Under South Dakota law, an expert's testimony is not inadmissible merely because it may involve an ultimate issue for the jury.[5]

[¶ 38] Barber contends that Agent Johnson's testimony "went beyond the mere embrace of the ultimate issue, but instead devoured the issue before the jury." SDCL 19–15–4 is an embodiment of rule 704 of the Federal Rules of Evidence and was adopted by South Dakota Supreme Court Rule 93–18, effective July 1, 1993. Under that rule, a properly qualified witness may testify to the customs and practices and modus operandi of those who deal in narcotics, as long as the witness is not asked whether the defendant is innocent or guilty. *State v. Williams*, 168 Wis.2d 970, 485 N.W.2d 42 (1992); *State v. Vesey*, 482 N.W.2d 165 (Iowa App.1991). Johnson's testimony focused on his conclusions regarding the receipt evidence in conjunction with the package which was shipped to South Dakota from Arizona. Johnson did not express an opinion that Barber was guilty of the offenses charged. The scope of his opinion was merely that based upon his review of the evidence, he believed that cocaine was being shipped in from Arizona to Rapid City for resale. His testimony did not exceed the parameters of SDCL 19–15–4 and the admission of the testimony was not erroneous.

[¶ 39] **III. Acquittal of co-defendant on the charge of conspiracy.**

[¶ 40] Barber was found guilty of conspiring to distribute a controlled sub-

---

5. SDCL 19–15–4 provides: "Testimony in the form of an opinion or inference otherwise admis-

sible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact."

stance, while the co-defendant was found not guilty of the same offense. Barber contends that the conviction of only one co-conspirator cannot stand where the indictment charges both co-conspirators were working together. The contention is without merit. The indictment alleges that Barber and Hunt "[d]id conspire and agree with each other *and any other unknown co-conspirators* to distribute a controlled substance...." The facts of the case clearly established that the package containing the drugs was shipped from Arizona to South Dakota by an unknown person, who the jury could conclude was an unknown co-conspirator with Barber. The evidence permitted a conclusion that Hunt may not have conspired, but that Barber did conspire with some other unknown person. The verdicts were therefore consistent.

[¶ 41] **IV. Failure to grant the motion for a new trial.**

[¶ 42] Barber moved for a new trial, arguing (1) that the verdicts (an acquittal on the count of possession with intent to distribute cocaine, and conviction of conspiracy to distribute cocaine) are irreconcilably inconsistent; (2) that the prosecutor in closing argument improperly commented on the defendant's failure to put forth certain evidence, and (3) that alleged newly discovered evidence dictates a new trial. We have examined all contentions and find each to be meritless. The decision to grant a new trial is in the discretion of the trial court. *State v. Beynon*, 484 N.W.2d 898 (S.D.1992); *State v. Collier*, 381 N.W.2d 269 (S.D.1986). The trial court's denial of the motion for a new trial was not erroneous.

[¶ 43] We therefore affirm on all issues.

[¶ 44] MILLER, C.J., and SABERS, AMUNDSON and GILBERTSON, JJ., concur.

[¶ 45] STEELE, Circuit Judge, for KONENKAMP, J., disqualified.

