1997 SD 94

**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Robert John LOFTUS, Defendant and Appellant.**

No. 19708.

Supreme Court of South Dakota.

Considered on Briefs April 29, 1997.

Decided July 16, 1997.

Mark Barnett, Attorney General, Frank Geaghan, Assistant Attorney General, Pierre, for Plaintiff and Appellee.

Michael Stonefield, Office of the Public Defender for Pennington County, Rapid City, for Defendant and Appellant.

SABERS, Justice.

[¶ 1] Robert Loftus was convicted of first degree robbery, commission of a felony while

armed with a firearm, attempted second degree rape, and aggravated assault. He appeals, arguing the trial court erred by 1) denying appointed counsels' motion to withdraw, and 2) allowing the introduction of other acts evidence. We affirm.

## FACTS

[¶ 2] On April 26, 1995, an armed man dressed in black clothes and black ski mask entered a bar and supper club northwest of Rapid City. He approached S.L., the manager, telling her, "This is a robbery, I'm here for your money, get me your money." After she gave him the money from the cash register, he instructed her to take him to the office because, he stated, "there's got to be a safe." As they walked toward the office, he held the gun to S.L.'s neck. Once in the office, he told her to lie on her stomach on the floor. He tried to tie her hands while she was on her stomach. Unsuccessful in his attempts, he told her to turn over onto her back. He tried to tie her hands in front of her stomach, and again failed. He told her to remove one pant leg, stating "that would help him tie [her] up better." After she complied, he struck her in the left side of the face, causing the right side of her head to strike a cinder block wall. He hit her again at least once and possibly three or four more times.[1] By now he was on his knees in front of her and as he reached for his waistband, S.L. told him more employees would be arriving soon. He then left.

[¶ 3] Two customers who arrived around the time of the robbery noticed a red car with tinted windows in the parking lot of the bar. Loftus bought a red Chevy Cavalier in early April of 1995 and had the windows tinted shortly thereafter. The Cavalier was repossessed on April 29, 1995. Loftus bought a red Hyundai with tinted windows in June 1995.

[¶ 4] One piece of evidence retrieved from the bar was a piece of black plastic; it was eventually matched as the butt plate missing from a rifle pawned by Loftus on May 26, 1995.

[¶ 5] A similar robbery at a liquor store in Box Elder led police to Loftus. Shortly before 11:00 p.m. on June 21, 1995, an armed man wearing dark clothing and a ski mask entered the liquor store. After the clerk, V.N., locked the door at his instruction, the robber helped her remove money from the cash register and place it in a bag. He made her open the safe and give him the money from her purse. He told her to lie on her stomach and he tied her wrists and ankles. He moved her to another room, placed her on her back and raped her. Before he left, he made her lie on her stomach again and tied her wrists to her ankles. She remained that way until the store owner arrived at 6:00 a.m. the next day.

[¶ 6] A Box Elder resident called police when he learned from a news story that police were looking for a red vehicle with tinted windows. A few days before the Box Elder robbery, he saw a red Hyundai parked near the liquor store. He became suspicious when the driver laid down on the seat. He followed the car for a short while before losing sight of it. When he heard about the robbery, he returned to where he last saw the car, eventually locating it. He wrote down the license number and gave it to police. The car was registered to Loftus.

[¶ 7] A warrant was issued for Loftus on June 24, 1995. The next day a highway trooper spotted a vehicle matching the description of Loftus' car. Once the trooper activated his lights and siren, Loftus fled and a high-speed chase through Rapid City and the Black Hills followed. He was apprehended after running from his car in a wooded area. A Division of Criminal Investigation agent observed the chase from a helicopter and saw Loftus remove something from his waistband and place it under an overhang. When another officer searched the area, he found an envelope containing a bundle of money.

[¶ 8] Loftus was interviewed by two detectives after he was arrested. Initially, he denied any knowledge of the bar robbery or

---

**1.** This assault caused severe injuries requiring hospitalization. S.L. continues to suffer lingering effects of the head injury.

the liquor store rape and robbery. During a second interview with a different officer (Deputy Sheriff Glassgow), Loftus stated that another man committed both crimes and that he was only the driver and stood by the door while the crimes were being committed. However, he knew that the victims were tied up during the robberies. Additionally, both women testified that their attackers appeared to be alone. Loftus' statements were received at trial through Glassgow's testimony and their admissibility is not at issue in this appeal. At trial, Loftus urged an alibi defense and feebly explained that the only reason he admitted to being present at both crimes was because he was "talked into being the driver" by the first two officers who interviewed him: "I can't remember which detective it was, but it was brought up if I had only been the driver, that it would be different or they would be easier on me, on myself." He also testified that he told Glassgow he was the driver because Glassgow used vulgar language with him and threatened him with severe sentences:

> Well, at that point in time I guess I was upset, I was angry at him because of the statements that were made, he was making it sound like I wasn't being honest with 'em and at that point, me and [Glassgow] had some run-ins in the past and I just figured that he was playing games with me more or less and it was the wrong thing to do, obviously. Now, I realize that, but I decided to play my games back with him more or less.

[¶ 9] Loftus was charged in the Rapid City crime with first degree robbery, two counts of commission of a felony while armed with a firearm,[2] attempted second degree rape, and aggravated assault. A Part II Information alleging that Loftus was an habitual offender was also filed.

2. The trial court dismissed one count as duplicative at the close of the State's case.

3. Appellate counsel was trial counsel, and was denied permission to withdraw from representing Loftus on this appeal. The following statement appears in Appellant's Brief at 16:

Current appellate counsel cannot adequately advocate Loftus' position on this issue [the Fender ruling], for reasons which are as obvi-

[¶ 10] Shortly before trial, Loftus wrote to the trial court and the Disciplinary Board of the State Bar to express dissatisfaction with his court-appointed counsel. The trial court held a hearing to address these complaints. *See State v. Fender,* 484 N.W.2d 307, 309 (S.D.1992) (remanding for a complete hearing on defendant's request for new counsel and requiring defendant to show "good cause" why his current counsel was inadequate). That aspect of the hearing is not before us on this appeal. At the same hearing, defense counsel moved for permission to withdraw, which was denied by the trial court. Defense counsel stated that Loftus compromised their relationship by mailing his complaint to the State Bar and their relationship was now of an adversarial nature. Loftus appeals the denial of this motion.[3]

[¶ 11] At trial, the State was allowed to submit evidence concerning the robbery and rape at the Box Elder liquor store. The trial court ruled this evidence was relevant 1) to show how the police were led to Loftus, and 2) to prove identity, modus operandi, and intent, and held that it was more probative than prejudicial. Loftus appeals this ruling, claiming the admission of that evidence deprived him of a fair trial.

[¶ 12] **1. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION BY DENYING COUNSELS' MOTION TO WITHDRAW.**

[¶ 13] Our standard of review on the denial of a motion for substituted counsel is whether the trial court abused its discretion. *See State v. Iron Necklace,* 430 N.W.2d 66, 79 (1988):

> Appointment of substitute counsel is warranted only upon a showing of good cause and where substitution will not unreasonably disrupt the judicial process. A trial court's decision on a request for substitution or a continuance will not be reversed

ous now as they were at the time the withdrawal request was made following the sentencing. It would be an injustice to Loftus for any future court reviewing Loftus' convictions, however, to consider that he waived any challenge to the Trial Court's *Fender* ruling by not raising it on this appeal. Loftus requests that this court's judgment reflect that fact.

on appeal absent a showing of an abuse of discretion.

(*Adopting standard from People v. Johnson,* 144 Mich.App. 125, 373 N.W.2d 263, 268 (1985)); *see also State v. Irvine,* 1996 SD 43, ¶ 13, 547 N.W.2d 177, 181:

> In *People v. Cumbus,* 143 Mich.App. 115, 371 N.W.2d 493 (Mich.Ct.App.1985), the Michigan Court of Appeals reviewed the denial of a motion for substitute counsel based upon a breakdown in the attorney/client relationship. The court determined the breakdown was the fault of the defendant and ruled that the, "defendant was not entitled to substitution of counsel because the breakdown in his relationship was caused by defendant's admitted refusal to cooperate with his attorney." *Cumbus,* 371 N.W.2d at 496.

In *Irvine,* we stated that the defendant must show an "irreconcilable dispute regarding strategy or defense." *Id.* at ¶ 15, 547 N.W.2d at 181.

■ [¶ 14] In this case, Loftus fails to demonstrate such an irreconcilable dispute. The trial court questioned both of his court-appointed attorneys: [4]

THE COURT: Have you prepared for trial?

STONEFIELD: Yes.

THE COURT: Until this was dropped in your lap, were you ready for trial?

STONEFIELD: We would have been, yes.

THE COURT: When you say we would have been, concerning the merits of the case, I'm talking about the evidence, what has changed because of these proceedings?

STONEFIELD: What has changed about the ability to actually cross examine witnesses and present evidence at trial, *I would say nothing has changed in that respect.* I would say, if you require us to, we could try this case next week.

. . . .

THE COURT: All right, Ms. Janssen, were you ready for trial?

JANSSEN: Yes.

Here, as in *Irvine,* any breakdown alleged by counsel in the attorney/client relationship was Loftus' fault. "[A] defendant is not entitled to substitution of counsel where the breakdown ... is caused by his own refusal to cooperate with his attorney." 1996 SD 43 at ¶ 15, 547 N.W.2d at 182. Furthermore, Loftus has not shown a "substantive disagreement over strategy." *Id.* Accordingly, the trial court's denial of counsels' motion to withdraw is affirmed.

[¶ 15]   2. **WHETHER THE TRIAL COURT ABUSED ITS DISCRETION BY ADMITTING EVIDENCE CONCERNING THE BOX ELDER RAPE AND ROBBERY.**

[¶ 16] The trial court admitted evidence of uncharged acts relating to the robbery and rape at the Box Elder liquor store, finding it relevant to show how the police were able to trace the Rapid City crime to Loftus. The court further found it relevant to establish Loftus' identity, modus operandi, and intent. Loftus argues the evidence was more prejudicial than probative. He also argues it was improper for the State to attempt to prove Loftus' identity by introducing evidence of the liquor store robbery because the similarities between the two crimes were minimal and not so distinctive as to constitute the recognizable work of the same person. He also claims it was prejudicial to allow the evidence to show the perpetrator's intent because intent was relevant only to the attempted rape charge.

[¶ 17] Generally, evidence of crimes or acts other than the ones with which the defendant is charged are inadmissible, unless an exception applies. *State v. Moeller,* 1996 SD 60, ¶ 12, 548 N.W.2d 465, 471 (citing SDCL 19–12–5; *State v. Thomas,* 381 N.W.2d 232, 235 (S.D.1986)). SDCL 19–12–5 (FedREvid 404(b)) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be

**4.** As noted, Loftus does not appeal the trial court's ruling on his request for substitute counsel. Therefore, we will address only the grounds asserted in counsels' motion to withdraw, i.e., that Loftus' complaint to the State Bar created an adversarial relationship.

admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

[¶ 18] Evidence intricately related to the facts of the case is admissible without reference to SDCL 19–12–5. *State v. Barber*, 1996 SD 96, ¶ 18, 552 N.W.2d 817, 820 (citations omitted). *Cf. State v. Itzen*, 445 N.W.2d 666 (S.D.1989).[5] In this case, the court expressly admitted the evidence pursuant to SDCL 19–12–5 *and* as crucial evidence establishing how the police traced Loftus.

[¶ 19] "Even evidence of an uncharged offense arising out of the same transaction or series of transactions as the charged offense is not an 'extrinsic' offense within the meaning of 404(b), and is therefore not barred by the rule [when it] is contemporaneous and related to the crime rather than prior unrelated 'other acts.' " *State v. La*, 540 N.W.2d 180, 184 (S.D.1995) (citations omitted). As noted, it was a tip from a Box Elder resident which put the police on Loftus' trail. The fact that there was a crime in Box Elder is reasonably related to the crime at the Rapid City bar, was relevant to that crime, and not unfairly prejudicial. Under these circumstances, there is an insufficient showing of an abuse of discretion. *See 2 Weinstein's Federal Evidence*, § 404.07[2] (Matthew Bender 2d ed.):

> The rationale is that if the other-crimes evidence contributes to an understanding of the event in question, or if a description of the immediate circumstances reveals other crimes than those charged, exclusion will lead to a highly artificial situation at the trial, rendering the testimony confusing.

(Collecting cases *id.* at note 16 and noting that all federal circuit courts of appeal adopt this view).

[¶ 20] However, the propensity evidence arising from the details of the rape at Box Elder were introduced at trial, and go beyond mere "background" evidence. This evidence should have been severely limited or excluded because there was no rape in the Rapid City robbery, only a claim of attempted rape. Therefore, we agree with Loftus that the admission of this evidence must be reviewed under SDCL 19–12–5.

[¶ 21] The trial court must engage in a two-step analysis when ruling on admissibility of other acts evidence under SDCL 19–12–5:

1. Is the intended purpose for offering the other acts evidence relevant to

5. In *Itzen*, several law office windows were broken in five acts of vandalism within a 36–hour time period following a client's favorable verdict. The client's adversary in that lawsuit was charged with one of the incidents, as he was identified leaving the scene. This court reversed the trial court's admission of evidence regarding the other four incidents on the basis of SDCL 19–12–5. One of the dissents suggested that statute did not apply under the circumstances:

> This is a series of similar events in a short period of time which were essentially contemporaneous. This evidence, though circumstantial, was relevant, material, and competent. Under such circumstances SDCL 19–12–5 is not implicated because "[e]vidence of 'an uncharged offense arising out of the same transaction or series of transactions as the charged offense is not an "extrinsic" offense within the meaning of rule 404(b) [SDCL 19–12–5]' and is thus admissible." *United States v. Simpson*, 709 F.2d 903, 907 (5th Cir.1983) (quoting *United States v. Gonzalez*, 661 F.2d 488, 493 (5th Cir.1981), *cert. denied*, 464 U.S. 942, 104 SCt. 360, 78 L.Ed.2d 322 (1983)); *see also United States v. Leichtman*, 742 F.2d 598, 604 (11th Cir.1984). Accordingly, when evidence that is not part of the crime charged "forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury" admission is proper. *United States v. Williford*, 764 F.2d 1493, 1499 (11th Cir.1985); *see also United States v. Currier*, 821 F.2d 52 (1st Cir.1987); *United States v. Brennan*, 798 F.2d 581 (2nd Cir.1986); *United States v. Howard*, 504 F.2d 1281 (8th Cir.1974); *State v. Scott*, 211 Neb. 237, 318 N.W.2d 94 (1982). Moreover, admission of such evidence that completes the story is proper even though the evidence tends to show the commission of another offense. *Chase v. Crisp*, 523 F.2d 595, 600 n. 4 (10th Cir.1975), *cert. denied*, 424 U.S. 947, 96 S.Ct. 1418, 47 L.Ed.2d 354 (1976). In the present case, evidence of the uncharged incidents [ ... ] is inextricably intertwined with the charged offense. A full account of the crime is not possible without reference to all incidents of damage. Thus, the uncharged offense cannot be considered "prior bad acts" within the scope of SDCL 19–12–5, and the challenged evidence is admissible. *Itzen*, 445 N.W.2d at 670 (Sabers, J., dissenting).

some material issue in the case (factual relevancy), and

2. Is the probative value of the evidence substantially outweighed by its prejudicial effect (logical relevancy).

*Moeller,* 1996 SD 60 at ¶ 13, 548 N.W.2d at 472. We review the trial court's decision to admit such evidence under the abuse of discretion standard. *Id.* (citing *State v. Ondricek,* 535 N.W.2d 872, 873 (S.D.1995)).

[¶ 22] "Any fact that tends to connect an accused with the commission of a crime is relevant and has probative value. Such other incidents are material if they show a plan or system of criminal action and acts constituting continuous offenses." *State v. Tiger,* 365 N.W.2d 855, 856 (S.D.1985) (citations omitted). The trial court permitted evidence of the details of the Box Elder crime, finding it relevant to identity, modus operandi, and intent.[6]

[¶ 23] Loftus put his identity in issue by admitting his presence at both crime scenes but denying his participation in the crimes. When the "similarities between the prior and charged offenses [are] striking [they are] highly probative on the issue of defendant's identity." *Thomas,* 381 N.W.2d at 236–37 (collecting cases to show propriety of admitting such evidence to counter an alibi defense). This court stated in *State v. Pedde,* 334 N.W.2d 41, 42 (S.D.1983), that modus operandi and identity are closely related and that the former is often used to prove the latter:

The exception in Rule 404(b) for use of other crimes evidence to prove identity will probably be used most often to encompass another exception in McCormick's list that does not appear elsewhere in the Rule:

"[t]o prove other like crimes by the accused so nearly identical in method as to earmark them as the handiwork of the accused." This exception, often referred to as the "handiwork or signature exception" or the exception for "modus operandi" is, however, only one method by which other crimes can prove identity[.]

(Citations omitted).

[¶ 24] Loftus argues the two crimes are not so similar as to make evidence of the uncharged one admissible. For example, he points out that the assailants in each case used a very different style of gun; the crimes were committed at different times of day; the Box Elder perpetrator smelled of alcohol, while the Rapid City robber did not appear to have been drinking; the liquor store lost liquor and beer in the robbery, the bar did not; S.L. received severe injuries from an assault separate from the actions found to constitute attempted rape, V.N. did not; the robber was unable to tie up S.L., while V.N.'s attacker tied her so well she was unable to free herself. Finally, the liquor store robber asked V.N. for a marker and used it to leave graffiti on a cooler, but nothing of this sort was discovered at the bar. However, *United States v. Powers,* 978 F.2d 354, 361 (7th Cir.1992), places the focus "not on the dissimilarities between the charged offense and the other acts evidence, but on their common characteristics."

[¶ 25] "[E]vidence of prior acts need not be that of an identical offense but only 'of similar involvement reasonably related to the offending conduct.'" *Pedde,* 334 N.W.2d at 43 (citing *United States v. Gocke,* 507 F.2d 820, 825 (8th Cir.1974), *cert. denied,* 420 U.S. 979, 95 S.Ct. 1407, 43 L.Ed.2d 660 (1975)).

---

**6.** Despite the trial court's purported limitation to identity, modus operandi, and intent, it orally instructed the jury prior to the testimony that it could consider the evidence for several other purposes:

You are about to hear that the Defendant *committed* a crime similar to the one charged in this case. Although such evidence is allowed for purposes, you may not use this evidence to decide whether the Defendant carried out the physical acts involved in the crime charged that are under consideration in this case. You may only consider this evidence to determine such things as *motive, intent, common scheme*

*or plan, modus operandi or identity* of the person charged.

The written instruction to the jury stated Loftus *"may have"* committed another offense and left out *"modus operandi"* but otherwise was essentially the same. (Emphasis added to both instructions). Although this case does not turn on these confusing and mistaken instructions, we caution against similar use in the future. *See State v. Werner,* 482 N.W.2d 286, 289 (S.D.1992) (discussing SDCL 19–12–5 and stating that the trial court *must* identify the applicable exception).

*See also Thomas,* 381 N.W.2d at 236 ("[W]here incidents are closely related in time and similar in modus operandi, evidence of other crimes is frequently admissible on the question of defendant's identity.").

[¶ 26] In this case, the two crimes occurred 56 days apart and share many factual similarities. The two victims each gave police a similar physical description of her attacker. The perpetrator in each case wore all black clothes and disguised his face with a black ski mask. The victims were both threatened with a gun and were both instructed to lock the door. They were both told not to include the coins, but to only surrender currency. The robber in each case insisted there must be a safe in both establishments. Money was stolen from both victims' purses. The attempt to tie S.L.'s arms and legs was virtually identical to the manner in which V.N. was tied.

[¶ 27] The similarities between these offenses may be striking and more probative than prejudicial on the issue of the defendant's identity in most cases. *Thomas, supra.* That may not be the case when, as here, the identity of the perpetrator of the Box Elder offenses is not established—in fact, for the trial court to presume and instruct that Loftus was the rapist in a later rape-robbery and to admit the details of the uncharged rape might have been more prejudicial than probative in such circumstances.[7] *See, e.g., State v. Houghton,* 272 N.W.2d 788, 790 (S.D.1978) *overruled on other grounds by State v. Willis,* 370 N.W.2d 193, 198 (S.D. 1985):

The notion of prejudice encompasses two distinct tendencies of jurors. The first is the tendency to convict a man of the crime charged, not because he is guilty of that offense, but because evidence introduced indicates that he had committed another *unpunished* crime or that he is a "bad man" who should be incarcerated regardless of his present guilt. *A conviction for this reason would violate the principle that a man may be punished only for those acts with which he has been charged.* The second is the tendency to infer that because the accused committed one crime, he committed the crime charged. In many instances this inference rests on no greater foundation than the belief that commission of one crime indicates a propensity to commit others.

(Citation omitted; emphasis added); *see also State v. Rufener,* 392 N.W.2d 424, 432 (S.D. 1986) (Sabers, J., dissenting) (noting that evidence of the defendant acting in conformity with prior *unproven* acts should be prohibited under SDCL 19–12–5).

[¶ 28] This potentially prejudicial evidence, coupled with the verbal instruction by the trial court that Loftus "*committed*"[8] the Box Elder crimes (see *supra* note 6), may have required reversal, but for the fact that here, Loftus admitted his presence at the scene of both robberies. This crucial admission had several important effects. If believed by the jury, it totally destroyed Loftus' alibi defense and rendered harmless the court's verbal instruction. It reduced the prejudicial effect of the rape testimony and increased its probative effect. It changed the question con-

7. We acknowledge that evidence of a rape committed during a similar robbery is relevant and somewhat probative to the charge of attempted rape, assuming identity is established.

8. The fact that the trial court initially instructed the jury that Loftus "committed" the Box Elder rape and robbery intruded upon the jury's function. The trial court's role in the admission of other acts evidence is 1) to determine its relevance; 2) to determine whether its potential for unfair prejudice substantially outweighs its probative value; 3) to examine the evidence and decide "whether the jury could reasonably find the conditional fact [here, that Loftus committed the Box Elder crime] by a preponderance of the evidence." *Huddleston v. United States,* 485 U.S. 681, 690–92, 108 S.Ct. 1496, 1501–02, 99

L.Ed.2d 771, 782–84 (1988) (emphasis added). It is well-settled that "it is the function of the jury to resolve conflicts in the evidence, determine credibility of the witnesses, and weigh the evidence." *Jenner v. Leapley,* 521 N.W.2d 422, 432 (S.D.1994) (citing *State v. Wall,* 481 N.W.2d 259 (S.D.1992); *State v. Huettl,* 379 N.W.2d 298 (S.D.1985)). When evidence presents a jury question, it is improper for the trial court to usurp the jury's "prime function" as trier of fact. *Wangen v. Knudson,* 428 N.W.2d 242, 246 (S.D. 1988) (citation omitted); *see also Olesen v. Lee,* 524 N.W.2d 616, 620 (S.D.1994) ("It is hornbook law that the credibility of a witness and the weight to be given his testimony rests exclusively with the jury.") (citations omitted).

cerning the identity testimony from admissibility to credibility. In effect, it controlled the case by substantially establishing the State's case. This crucial admission, coupled with the proximity in time of the two crimes and the similarities between the two, leads us to conclude the trial court did not abuse its discretion in admitting this evidence or in ruling that its probative value exceeded its prejudicial effect.[9]

■ [¶ 29] In light of our holding regarding the identity exception to SDCL 19–12–5, we need not determine whether the Box Elder evidence was properly admitted on the attempted rape charge under the intent exception. However, we note that the intent exception should not be used where the identity of the perpetrator of the other act is not established. This is especially so where, as here, the State is using a later, unproved, uncharged act. As noted, before admitting evidence of the other act, the trial court must first determine whether the jury could reasonably find that the defendant committed the other act by a preponderance of the evidence. *Huddleston*, 485 U.S. at 690–92, 108 S.Ct. at 1501–02, 99 L.Ed.2d at 782–84.

[¶ 30] Finally, we remind prosecutors of the statement in *State v. Grooms*, where this court cautioned against abusing the exceptions to the exclusionary rule of SDCL 19–12–5:

> We fail to understand the rationale for these evidentiary admissions. The limited reasons for admittance of other act evidence appears to have been exceeded, and the extension of said evidence in this case comes perilously close to requiring reversal. Evidence of other acts is generally inadmissible. But if other acts evidence is introduced by exception, it must be scrupulously monitored to insure that it is considered only for the limited purpose(s) of its admittance. We caution the trial bar and bench that the exception aspect of this rule can reach a limit and the admittance of this evidence strains the bounds of evidentiary propriety. A trial court must per-

ceive basic probative value and not unduly consume its own time.

399 N.W.2d 358, 362 (S.D.1987).

[¶ 31] The judgment of conviction is affirmed.

[¶ 32] AMUNDSON, J., concurs.

[¶ 33] MILLER, C.J., and KONENKAMP and GILBERTSON, JJ., concur in result.

GILBERTSON, Justice (concurring in result).

[¶ 34] I join the writing of Justice Sabers except for ¶¶ 27–30. I cannot agree that the trial court's admission of the rape of the store clerk during the Box Elder robbery on June 21, 1995, "may have required reversal, but for the fact that here, Loftus, admitted his presence at the scene of both robberies." There was no abuse of the trial court's discretion in the admission of this evidence. It was properly admitted to show intent, and such admission was more probative than prejudicial.

[¶ 35] Loftus was charged with, and convicted of, attempted second-degree rape of the clerk in the Rapid City robbery on April 26, 1995. It was unclear as to Loftus' intent when he ordered the clerk to remove her pants leg. He stated that it "would help him tie [her] up better." However, the clerk testified that she believed Loftus was preparing to rape her. The trial court held that the rape at the Box Elder robbery was probative as to whether it was Loftus' intent during the Rapid City robbery to rape the clerk or to merely tie her up.

[¶ 36] Attempted second-degree rape (SDCL 22–22–1(2)); SDCL 22–4–1 requires a specific intent in the mind of the perpetrator; that is, the specific intent to commit the crime of rape. *State v. Hart*, 1996 SD 17, ¶ 13, 544 N.W.2d 206, 209. We have previously held that in specific intent crimes, proof of similar acts may be admitted to carry that burden even if the defense to the charge is an outright denial. *State v. White*, 538 N.W.2d 237, 244 (S.D.1995); *State v.*

---

9. We have reviewed the record and find no merit in Loftus' contention that the trial court did not

weigh the probative value of the evidence against its prejudicial effect.

*Ondricek,* 535 N.W.2d 872, 874 (S.D.1995); *State v. Klein,* 444 N.W.2d 16, 19 (S.D.1989).

[¶ 37] Justice Sabers questions whether there was sufficient evidence to establish "this later, unproved, uncharged act." Although SDCL 19–12–5 is commonly referred to as a "prior bad acts" rule, its actual language deals with "other ... acts." There is no requirement that the "other act" result in a criminal charge. It does not have to be criminal or even wrongful. *State v. Dace,* 333 N.W.2d 812, 816 (S.D.1983); *State v. Wedemann,* 339 N.W.2d 112, 115 (S.D.1983). Most recently in *State v. Barber,* 1996 SD 96, ¶ 29, 552 N.W.2d 817, 822, we dealt with the standard of proof required for admission of these other acts:

> This Court has previously rejected the notion that bad acts testimony must meet any standards of credibility before it may be admitted into evidence. In *State v. McDonald,* 500 N.W.2d 243, 246 (S.D. 1993), this Court stated:
>
> In [*State v.] Sieler* [397 N.W.2d 89, 93 (S.D.1986) ], we rejected adopting an additional requirement for admission of bad acts evidence under SDCL 19–12–5. The reliability of the evidence sought to be admitted is already an inherent part of the tests the court must perform. We decline to adopt an additional standard for a trial court to balance before deciding to admit or exclude prior bad acts.

Here the trial court made such a determination clearly resting, in part, upon the admission by Loftus that he was at the scene of the rape at the time it occurred.

[¶ 38] Given the fact that the trial court did not abuse its discretion by admission of the evidence to establish intent, I would not address the alternative justification of identity which troubles Justice Sabers.

[¶ 39] I am authorized to state that Chief Justice MILLER and Justice KONENKAMP join this special writing.